**Charles SHILLING, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–00–379–CR.

Court of Appeals of Texas,
Waco.

Oct. 10, 2001.

Rehearing Overruled Dec. 12, 2001.

Phil Martinez, Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., James Wiley, McLennan County Asst. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, VANCE and GRAY, Justices.

## OPINION

BILL VANCE, Justice.

Charles Shilling was convicted by a jury of aggravated robbery and sentenced to twelve years in prison. A key piece of evidence against him was the written statement made to police by his co-conspirator, Dennis Kahanek. The statement reads, *verbatim:*

> "In or around the 23rd I was at Troy Burns house spending the night. A cupul of his friends came over. Charles and Eric came in sat and we listened to music. Then they wanted to leave so we left and went down the road a little bit and saw a guy walking. Then one of the guys Charles or Eric sayed lets get this guy so we get out. Eric sneaks up behind and punches him on his way down I kicked him. Eric had him down then Charles came out with a gun and told the guy to face the ground don't look at me or Ill shoot you. I told him to put it away but I guess he didn't hear me so I backed off and started to walk to the car. I did not see Troy do anything. We left went to Albertson I told Eric to go there cause I could probably get away with it. Me and Troy went inside got to 40oz put them

down our pants and went outside got in the car and left. Cops pulled us over we put the alcohol in the bottom of the seat we got tickets. I had to walk home from Albertsons. When we got caught Charles was not with us he walked off or something. This all happened in Erics car a maroon grand am."

The statement was offered and admitted into evidence after Kahanek asserted his constitutional right not to testify. The court ruled the statement fell under one of the hearsay exceptions, *i.e.,* a "statement which was at the time of its making ... so far tended to subject the declarant to ... criminal liability ... that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." TEX.R. EVID. 803(24); *Bingham v. State,* 987 S.W.2d 54 (Tex.Crim.App.1999).

### The Confrontation Clause

■ Shilling's single issue on appeal is that his Sixth Amendment right to confront the witnesses against him was violated when he was not allowed to cross-examine Kahanek. U.S. CONST. amend. VI. We review a trial court's decision to admit evidence over objection for an abuse of discretion, which we will not find if the decision was in the "zone of reasonable disagreement." *E.g., Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990).

■ The statement contains a mixture of self-incriminating and non-self-incriminating declarations. The parts about what

Shilling did are not necessarily incriminating as to Kahanek. Under a Confrontation Clause analysis, we find the entire statement was inadmissible. In *Lilly v. Virginia,* the Court described the test used to determine whether hearsay violates the Confrontation Clause. 527 U.S. 116, 124–25, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999). To avoid a violation of the Confrontation Clause, hearsay evidence must fall within a "firmly rooted hearsay exception,"[1] *or* must contain "particularized guarantees of trustworthiness" such that cross-examination would probably add little, if anything, to the reliability of the evidence. *Id.* (citing *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)).

Hearsay which falls into the "firmly rooted" category is that "whose conditions have proven over time 'to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath' and cross-examination at a trial." *Id.,* 527 U.S. at 126, 119 S.Ct. at 1895 (citing *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)). *Lilly* referred to *Bruton v. United States* for the proposition that while a defendant's confession is one type of statement against penal interest and admissible against him, use of a confession as evidence against a co-defendant is not justified because such confessions are not within a firmly rooted exception to the hearsay rule for Confrontation Clause purposes. *Id.,* 527 U.S. at 128, 119 S.Ct. at 1896 (citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)). The Court found that, consistent with the underlying principles in *Bruton,* a confession made to police by an accomplice which incriminates the

---

1. The assumption is that the framers of the Sixth Amendment intended to respect certain long-standing rules of evidence. *Lilly,* 527 U.S. at 125, 119 S.Ct. at 1894 (citing *Mattox v. United States,* 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)).

defendant is inadmissible under general Confrontation Clause analysis.[2]  *Id.,* 527 U.S. at 131, 119 S.Ct. at 1897.

The Court next turned to the "residual admissibility test," *i.e.,* whether a hearsay statement, by its content and the circumstances under which it was given, is inherently trustworthy.  *Id.,* 527 U.S. at 135–36, 119 S.Ct. at 1899–1900.  This test recognizes that rigid adherence to the Clause's standard for admissibility "might in an exceptional case exclude a statement of an unavailable witness that is incontestably probative, competent, and reliable, yet nevertheless outside of any firmly rooted hearsay exception."  *Id.,* 527 U.S. at 136, 119 S.Ct at 1900.  The Court noted:

> It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old ex parte affidavit practice—that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*Id.*  The court also reaffirmed an earlier holding that precludes the use of corroborating evidence to support a "particularized guarantee of trustworthiness."  *Id.* 527 U.S. at 137–38, 119 S.Ct. at 1900 (citing *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)).  Rather, the hearsay must possess indicia of reliability by virtue of its inherent trustworthiness.  *Id.,* 527 U.S. at 138, 119 S.Ct. at 1901.

Because Kahanek's statement does not fall with a well rooted exception to the hearsay rule, and because the State has not demonstrated the inherent trustworthiness of the statement to satisfy the demands of the Confrontation Clause, the statement fails the *Roberts* test.  Thus, the court erred in admitting it.

### Harm Analysis

When an error of constitutional proportion has occurred, we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  Tex.R.App. P. 44.2(a); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).  The Court of Criminal Appeals described this review in *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989).  Citing *Fahy v. Connecticut,* 375 U.S. 85, 88, 84 S.Ct. 229, 231, 11 L.Ed.2d 171 (1963), the *Harris* court said: "We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of.  The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.  To decide this question, it is necessary to review the facts of the case and the evidence adduced at trial."  *Harris,* 790 S.W.2d at 585.  The goal is to examine all the evidence "solely to trace the impact of the error.  The untainted evidence is not to be weighed in its own right, nor is it to be examined to see if it is cumulative with the tainted evidence."  *Id.*

■ Based on *Harris,* in assessing harm we do not review the evidence against the defendant at trial, excluding

---

**2.** We acknowledge that our observation in *Williams v. State* that the statement-against-interest exception to the hearsay rule is a "firmly rooted exception," is incorrect in light of *Lilly. Williams v. State,* 815 S.W.2d 743, 749 (Tex.App.—Waco 1991), *rev'd,* 829 S.W.2d 216 (Tex.Crim.App.1992) (consideration of issue by court of appeals exceeded scope of remand order).

the objected-to evidence, to determine if the evidence was sufficient to support a conviction. That would place us in the shoes of the jury, substituting ourselves for the jury as fact-finder. Rather, our inquiry is whether we can say beyond a reasonable doubt that the erroneously-admitted evidence did not prejudice the jurors' decision-making process. *Id.* at 587. *Harris* states six factors we should consider:

(1) the source of the error,

(2) the nature of the error,

(3) whether and to what extent the State emphasized the error,

(4) the probable implications of the error,

(5) how much weight a juror would probably place on the error, and

(6) whether declaring the error harmless would encourage the State to repeat the error.

*Id.*

Our analysis shows:

(1) The source of the error was the State, which offered the statement in its entirety.

(2) The nature of the error was that Shilling did not have an opportunity to cross-examine a key witness against him.

(3) The State emphasized the statement in its closing argument, reading the part about Shilling pointing a gun at the victim.

(4,5) Kahanek's statement probably had little effect on the jury. The jury was instructed under the law of the parties. TEX. PEN.CODE ANN. §§ 7.02, 7.03 (Vernon 1994). By these instructions, Shilling could be convicted even if he did not use the gun, as long as one of his co-conspirators did. Actually, proving specifically who used the gun was not necessary, just so there was proof someone in the group did. There was evidence of that. The victim testified that one of his attackers used a gun. Fourteen-year-old co-conspirator Burns testified that he saw Shilling pointing at the victim like he had a gun, and heard someone threaten to shoot the victim. However, he stopped short of testifying he saw Shilling holding a gun or that it was Shilling who made the threat. John Abney testified that the night of the robbery Shilling spoke of having a gun in the car. A gun was also recovered from the co-conspirator's car. Therefore, these *Harris* factors weigh heavily in the State's favor.

(6) Declaring the error harmless would not necessarily encourage the State to repeat the error. The State's knowing that reversal is a possible consequence under *Harris,* even if the non-erroneously admitted evidence is sufficient to convict, is a deterrent to future violations.

Weighing the *Harris* factors, especially "4" and "5," we conclude beyond a reasonable doubt that the statement did not prejudice the juror's decision-making process.

### Conclusion

We overrule Shilling's sole issue and affirm the judgment.