**David VENABLE, Appellant.**

v.

**The STATE of Texas, Appellee.**

No. 09–02–015 CR.

Court of Appeals of Texas, Beaumont.

Submitted July 28, 2003.

Decided Aug. 13, 2003.

Bryan Frazier, Orange, for appellant.

John D. Kimbrough, County Atty., Troy Johnson, Asst. County Atty., Orange, for state.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

After trial by jury, David Venable was convicted of the murder of Mark Jimijo Neese, TEX. PEN.CODE ANN. § 19.02 (Vernon 2003), and was sentenced by the judge to a term of forty (40) years in the Texas Department of Criminal Justice, Institutional Division. On appeal, Appellant does not challenge the sufficiency of the evidence supporting his conviction. He raises a single issue, to wit:

> Whether the trial court erred in admitting business records as an exception to hearsay under Rule of Evidence 902(10) where the document accompanying the records was not an "affidavit" as prescribed by Texas Government Code section 312.011 because the document did not contain the notary's seal of office?

For the reasons stated below, we affirm.

Jimijo[1] Neese, who made his living transporting and selling drugs and stolen cars between Houston and New Orleans, was shot and stabbed to death either late on August 22 or early on August 23, 1999, at a boat ramp near the Sand Pit Lake in Rose City, Orange County, Texas. Four individuals, John Prewitt, Shad Brown, Billy McIntosh and Appellant were all present at the scene. Neese had been lured to the area by telephone calls placed by Brown to Neese's cell phone, promising that he would be able to obtain prescription medication at that location. Before Neese arrived, Prewitt departed. After Neese arrived, Appellant shot him three times with a Mac 11, which had been equipped with a "home-made" silencer fashioned from, among other things, PVC pipe and electrical tape. Neese was then stabbed several times with a knife to make sure he was dead. The body was then placed in a boat, weighted down with concrete cinder blocks, taken to the far side of an island in the lake, and dumped overboard. Approximately one week later, two men fishing in the lake discovered a partially decomposed body, floating on the surface. The body was identified as that of Jimijo Neese.

Brown, Prewitt and McIntosh, were among the State's witnesses. All of these individuals used or distributed illegal drugs. The three of them had hatched a plan to kill Neese because Prewitt owed Neese a considerable sum of money from fronting a quantity of cocaine for a drug deal and because Neese had failed to provide Prewitt with a promised clear title to a stolen Mitsubishi Monterro Sport vehicle which Neese had sold to him. Prewitt and Brown were also interested in taking over Neese's drug selling business. Appellant was to carry out the actual shooting. They knew Neese was in New Orleans

1. The deceased was best known as "Jimijo."

selling drugs, and upon his return there would be a considerable sum of money in his truck from the sales. After the murder, $12,500 was taken from the truck, along with a small television set. One or more of the actors drove the truck to Parkdale Mall in Beaumont, where it was left with the keys still in the ignition. The intent was for the truck to be stolen, which eventually did occur.

The actual murder weapon was never found, but the homemade silencer was recovered from the lake.

### Did the "certification" offered by the State comply with the applicable Rules of Evidence?

At trial, the Assistant District Attorney announced his intention to offer, pursuant to Tex.R. Evid. 803(6) and 902(10), State's Exhibit 57, the "certification" of Kim Cox, purporting to authenticate company records for a Sprint cellular phone listed in the name of Mark J. Neese, the deceased. The stated purpose was to establish that phone calls were made to and from Neese's cell phone (832–654–7541) from Brown's telephone (409–769–7424) in close proximity to the time of the murder. In offering Exhibit 57, the Assistant D.A. acknowledged that the Exhibit was "not exactly in the words provided for in 902(10)," but that the offered Exhibit was in "substantial compliance" with the Rules. Defense counsel objected, arguing that the document was not an affidavit, and did not comply with the requirements of the cited Rules.

Rule 803 of the Rules of Evidence sets forth the exceptions to the general rule making hearsay inadmissible. Sub-section (6) deals with "Records of Regularly Conducted Activity" and provides, in part, as follows:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, *or by affidavit that complies with Rule 902(10),* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.... (Emphasis added).

Tex.R. Evid. 803(6).

Rule 902(10)(a) provides for a filing of the records to be offered, accompanied by an affidavit, at least fourteen (14) days prior to trial. A suggested form of affidavit is contained in sub-section (b), which also states that an affidavit which "substantially complies" therewith shall suffice.

██ "Substantial compliance" has been defined to mean performance of the essential requirements of a statute. A deviation from the requirements of a statute which does not seriously hinder the legislature's purpose in imposing the requirement is in substantial compliance. *Rosenblatt v. City of Houston,* 31 S.W.3d 399, 404 (Tex.App.-Corpus Christi 2000, pet. denied). Defense counsel pointed out the following alleged "defects" in State's Exhibit 57: the document is entitled "Certificate," and not "Affidavit"; the absence of "I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated" as provided in Tex.R. Evid. 902(10); the absence of the place of certification by a notary public and the total lack of a notarial seal.

██ An "affidavit" is defined as a "statement in writing of fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office, ..." Tex. Gov't Code Ann. § 312.011(1) (Vernon 1998); *Wilie v. Signature Geophysical Services, Inc.,* 65 S.W.3d 355, 361 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). The absence of the notarial seal renders an affidavit defective. *Id. See also generally Hunter v. State,* 92 S.W.3d 596, 602 (Tex.App.-Waco 2002, pet. ref'd). In addition, an affidavit is required to affirmatively show that the affiant has personal knowledge of the facts set forth in the affidavit, *Weaver v. E–Z Mart Stores, Inc.,* 942 S.W.2d 167, 170 (Tex.App.-Texarkana 1997, no writ), and must affirmatively show how the affiant became familiar with the facts so as to testify as a witness. *Villacana v. Campbell,* 929 S.W.2d 69, 74 (Tex. App.-Corpus Christi 1996, writ denied).

██ State's Exhibit 57 contains neither a statement of personal knowledge, nor a proper notarial seal. We note that Rule 803(6) allows an affidavit in lieu of calling a witness to authenticate the records, without which the documents become merely inadmissible hearsay. Rule 902 permits certain documents to be admitted by self-authentication, again, in lieu of calling a witness for such purpose. *See* Tex.R. Evid. 901. The State recognized this basic premise. By failing to state that it is made on the personal knowledge of the witness, and by failing to be properly notarized, State's Exhibit 57 complies with neither the plain language nor the obvious purpose of the cited rules, to wit, assuring the trustworthiness of the information offered into evidence, without the necessity of calling of a live witness for authentication.

We find the "certification" not in substantial compliance with the rules of evidence, and hold that the trial court erred in admitting into evidence State's Exhibit 57.

### Does the trial court's error require reversal of the judgment?

Appellant concedes that the error is not of constitutional dimensions, and that Rule 44.2(b) of the Rules of Appellate Procedure applies:

> Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

TEX.R.APP. P. 44.2(b).

■ A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000). In assessing harm based on the erroneous admission of evidence, the appellate court's proper inquiry is whether it can say beyond a reasonable doubt that the erroneously-admitted evidence did not prejudice the juror's decision-making process. *Shilling v. State,* 60 S.W.3d 280, 283–84 (Tex. App.-Waco 2001, pet. ref'd) (citing *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App. 1989)). *Harris* specified the following considerations of the appellate court: 1) the source of the error; 2) the nature of the error; 3) whether or to what extent it was emphasized by the State; 4) the probable implications of the error; 5) how much weight a juror would probably place upon the error; and 6) whether declaring the error harmless would encourage the State to repeat the error. *Id.* at 587–88; *Shilling,* 60 S.W.3d at 284. The existence of overwhelming evidence in favor of a defendant's guilt is a factor which may be considered. *Harris,* 790 S.W.2d at 588.

■ Performing an analysis similar to that of *Harris* and *Shilling,* we note first that the State was the source of the error. The nature of the error was that the State was able to place before the jury records from Jimijo Neese's cellular phone company showing calls made before and after the time of the murder to and from his cell phone, 832–654–7541. The phone records were mentioned, but not emphasized, in the State's closing argument. However, the same testimony was presented to the jury through the testimony of Michelle McDonald, the representative of Southwestern Bell, whose records showed phone calls made to and from Neese and Shad Brown shortly before the murder occurred. Further, Brown testified that he contacted Jimijo Neese from his phone to Neese's cell phone shortly before the murder. The jury was free to believe this testimony regarding the phone calls, and in so doing, made the Sprint records merely cumulative. Combining this with the overwhelming evidence establishing Appellant's guilt, including an admission, we cannot say that this error had a substantial and injurious effect or influence on the jury's verdict.

The issue on appeal is overruled, and the judgment of the trial court is affirmed.

AFFIRMED.