Lauren Beth Owen v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-164-CR

LAUREN BETH OWEN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Lauren Beth Owen appeals her conviction for possession of methamphetamine.  A jury found Owen guilty and assessed her punishment at sixteen years’ confinement and a $10,000 fine.  In two issues, she contends that the trial court erred by admitting evidence during the guilt-innocence phase that she was on deferred adjudication probation at the time of the instant offense and that she had several fictitious driver’s licenses and credit cards in her possession when she was arrested.  We will affirm.

II.  Background Facts

In August 2002, Carrollton Narcotics Detective Steven Paul Maurizio and his partner, Detective Bill Hays, learned of an upcoming narcotics delivery to a dentist’s office at 2630 North Josey Lane, Suite 114.  A tip phoned in by a person who worked at the dentist’s office indicated that a white female carrying a Federal Express (FedEx) package containing the narcotics would exit the office and get in a white BMW automobile.  The tipster provided the information because Owen had received packages at the dentist office for four or five years, and the tipster was “tired of Ms. Owen receiving narcotics at [the dentist’s office].”

Maurizio and Hays arrived at the office in their unmarked vehicles at approximately 10:00 or 10:30 a.m. and spotted a white BMW parked in the parking lot.  At approximately 2:00 p.m., Owen, a white female, exited the dentist’s office with a FedEx package, walked to the white BMW, and got inside.  Owen drove across the street to a bank to cash her paycheck.  Maurizio noticed that Owen’s right brake light was out and radioed for a marked patrol car to make a traffic stop.  During this time, Maurizio never let Owen’s car out of his sight and never observed anyone else in the car with Owen.

Officer Jody Elmore responded to Maurizio’s call requesting a traffic stop and stopped Owen.  Elmore ran a check on Owen’s driver’s license and discovered that an outstanding warrant existed for Owen’s arrest.  Elmore arrested Owen, and Maurizio and Hays inventoried the contents of Owen’s BMW.  Maurizio observed the FedEx package opened in the BMW’s front passenger seat.  It was addressed to Owen’s attention at Dr. Arthur Wulwick’s office.  Upon further inspection, Maurizio found that envelopes inside the FedEx package contained three rocks of methamphetamine.  The rocks weighed a total of 87.32 grams and had an estimated street value of $8,700 to $25,000. Maurizio also found several blank FedEx package slips and evidence of prior FedEx payments by Owen.  Owen had $1,625 in cash in her possession when she was arrested.

Maurizio testified that approximately two or three weeks after Owen’s arrest, she called him on his cell phone ten to fifteen times.  Owen asked about retrieving her impounded car and provided Maurizio with reliable information about other methamphetamine users in the North Texas area, which led to the discovery of two methamphetamine laboratories.  Maurizio also testified that during these calls, Owen admitted that she knew the FedEx package contained methamphetamine, admitted that the drugs belonged to her, admitted that she planned to sell the drugs, said that the drugs were sent to her by Michelle Fernandez in Ontario, California, and said that she had previously received drugs via FedEx.  Maurizio said Owen never told him that the package belonged to someone else at the dentist’s office.

Owen testified that in August 2002, she was the office manager for Dr. Arthur Wulwick.  As part of her job, she received packages of dental supplies that were often addressed to her and she checked them into inventory. According to Owen, another employee of the office, Tonya Bradfield, said she had ordered a modem and had it sent to the office addressed to Owen because she did not work in the mornings when FedEx deliveries occurred.  Owen said that, on the date in question, the FedEx truck was at the office when she arrived for work around 9:00 a.m.  Owen said she signed for and received the package, believing it was Bradfield’s modem.

Approximately two hours later, Owen said the dentist frantically asked Owen where the FedEx package was; after she showed it to him, he handed it back to her and left for lunch.  Between 11:30 and noon, Bradfield called and asked Owen if the package had arrived.  Owen said that it had and told Bradfield that she would take it home and that Bradfield could come retrieve it.  While she was in the bank’s parking lot, however, Owen said Bradfield called again and asked if the two could meet in Plano.  Owen then decided to open the FedEx package.

Based on this testimony by Owen, the State argued that Owen had opened the door to cross-examination concerning her deferred adjudication probation for possession of methamphetamine and her possession of fictitious driver’s licenses and credit cards.  The trial court conducted a hearing outside the jury’s presence on the admissibility of this evidence.  Owen’s counsel argued that the evidence was inadmissible as improper impeachment evidence under Texas Rules of Evidence 608(b) and 609.  The State argued that Owen’s testimony before the jury that she had no idea the FedEx package contained drugs and had no intent to possess any drugs opened the door to the admission of her prior deferred adjudication probation for possession of methamphetamine. The State argued that the probation evidence rebutted Owen’s testimony and, under Rule 404(b), showed intent and knowledge.  Additionally, the State argued that the fictitious driver’s licenses and credit cards were admissible to impeach Owen’s credibility because she had previously lied about who she was. The trial court ruled that the State would be allowed to question Owen concerning both categories of evidence because “the whole part of the direct examination was that she had no idea what was happening here” and that “the door [was] opened to all of this at this point because of that.”  The trial court granted the defense a running objection.

During the State’s cross-examination of Owen, she testified that when she opened the package and saw it did not contain a modem, she suspected it contained drugs.  She claimed she could not throw the package out because it had her name on it.  According to Owen, Maurizio lied when he testified that she told him she planned to sell the drugs.  Pursuant to the trial court’s ruling, the State cross-examined Owen about her deferred adjudication probation for possession of methamphetamine and her possession of several fictitious driver’s licenses and credit cards when she was arrested.  Owen claims that the admission of this evidence requires a new trial.

III.  
Admissibility of Deferred Adjudication Probation Evidence

In her first issue, Owen contends that the trial court erred by admitting evidence of her prior deferred adjudication probation in violation of Texas Rules of Evidence 608(b) and 609, concerning impeachment evidence.  The State maintains that Owen’s deferred adjudication probation was not admitted pursuant to Rules 608 and 609 as impeachment evidence, but was admitted under Rule 404(b) to rebut Owen’s testimony that she lacked criminal intent or knowledge in possessing the drugs in the FedEx box.  We agree that Rule 404(b) governs the admissibility of Owen’s deferred adjudication probation.  
See Ramirez v. State
, No. 14-99-00418-CR, 2000 WL 991621, at *3 (Tex. App.—Houston [14
th
 Dist.] July 20, 2000, pet. ref’d) (not designated for publication) (stating extraneous act implicates provisions of Rule 404(b)); 
compare Castillo v. State
, 59 S.W.3d 357, 361-62 (Tex. App.—Dallas 2001, pet. ref’d) (stating that because testimony was not about any extraneous act, wrong, or crime, rule 404(b) was not implicated).

A.  Standard of Review for a Determination Under Rule 404(b)

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally.  
Tex. R. Evid.
 404(b)
; 
Nobles v. State,
 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); 
Jones v. State
, 119 S.W.3d 412, 418-19 (Tex. App.—Fort Worth 2003, no pet.)
; Booker v. State
, 103 S.W.3d 521, 530 (Tex. App.—Fort Worth 2003, pet. ref’d) (op. on reh’g); 
Curtis v. State
, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, pet. ref’d)
.  
Consequently, extraneous offenses are not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense.  
Tex. R. Evid.
 404(b)
; 
Booker
, 103 S.W.3d at 529.  An extraneous offense, however, has noncharacter-conformity relevance where it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  
Tex. R. Evid.
 401; 
Powell v. State
, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); 
Jones
, 119 S.W.3d at 418-19
.  That is, extraneous offense evidence that tends to make an elemental or evidentiary fact more or less probable or tends to rebut some defensive theory is relevant beyond its tendency to prove a person's character or that he acted in conformity therewith.  
Montgomery v. State
, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh'g); 
Jones
, 119 S.W.3d at 418-19.  Consequently, evidence of other crimes or extraneous misconduct may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or accident, or to rebut a defensive theory. 
Tex. R. Evid.
 404(b); 
Powell
, 63 S.W.3d at 439-40.

The State, as the proponent of extraneous offense evidence, bears the burden of 
showing admissibility.  
See Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh’g). 
 Appellate courts give great discretion to the trial courts in matters of relevancy, reversing only if the trial court acts outside “the zone of reasonable disagreement.”  
Montgomery
, 810 
S.W.2d at  391
.

B.  Rule 404(b) Relevance Determination

Here, Owen testified that she did not know the FedEx package contained drugs and had no intention of possessing drugs; she thought she was signing for a modem ordered by a coworker.  The trial court admitted evidence of Owen’s deferred adjudication probation to rebut Owen’s defense that 
“she had no idea what was happening here,” i.e., that Owen had no intent to possess the drugs and no knowledge that the FedEx package contained drugs.
(footnote: 2)  
When a defense witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may rebut the defense witness’s testimony by introduction of similar extraneous offenses.  
Roberts v. State
, 29 S.W.3d 596, 601 (Tex. App.—Houston [1
st
 Dist.] 2000, pet. ref'd). 
By raising a defensive theory, the defendant opens the door for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial.  
Id.

Here, Owen’s defensive theory was that she did not know the FedEx package contained drugs.  According to Maurizio, the tipster reported that Owen had received similar drug packages at the dentist office over a four or five year period.  Maurizio also testified that Owen told him she knew that the FedEx package contained methamphetamine.  Maurizio reported that Owen told him the package came from Ontario, California; that she planned to sell the methamphetamine; that she received methamphetamine via FedEx at her office on more than one prior occasion; and that she also received methamphetamine from the Chino area in California.  Owen testified she did not tell Maurizio any of these things, that he was lying.  Thus, evidence that Owen was on deferred adjudication probation for possessing methamphetamine, rebuts Owen’s testimony and defense that she had no idea the FedEx package contained drugs and that Maurizio was lying.  The evidence of Owen’s deferred adjudication status for possession of methamphetamine makes the existence of a fact of consequence to the determination of the action, i.e., Owen’s knowledge of the contents of the FedEx package and her consequent intent to possess the contents of that package, more probable than it would be without the evidence.  
See
 
Tex. R. Evid.
 401.  We hold that the trial court did not act outside the zone of reasonable disagreement in determining that Owen’s deferred adjudication was relevant.  
See Keller v. State
, 818 S.W.2d 425, 429 (Tex. App.—Houston [1
st
 Dist.] 1991, pet. ref’d) (holding extraneous transactions offered to show appellant’s intent to avoid payment for services rendered relevant); 
see also Ochoa v. State
, No. 04-95-00505-CR, 1996 WL 682212, at *7 (Tex. App.—San Antonio Nov. 27, 1996, pet. ref’d) (not designated for publication) (holding testimony regarding appellant’s prior dealings with informant and officers’ suspicions
 regarding appellant’s involvement in drug delivery relevant to refute appellant’s claimed lack of knowledge).

Owen contends that 
Moreno v. State
 requires the exclusion of the deferred adjudication probation evidence.  
22 S.W.3d 482 (Tex. Crim. App. 1999).  Here, unlike in 
Moreno
, however, the State did not utilize Owen’s deferred adjudication probation in an effort to establish that Owen had a bias or interest in avoiding conviction, rendering her testimony not credible.  
Id
. at 484, 486.  Instead, t
he State offered evidence of Owen’s deferred adjudication probation to rebut Owen’s testimony and theory of defense and to show her knowledge of and intent to possess the contents of the FedEx package—methamphetamine.  
See
, 
e.g., Cantrell v. State
, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987) (holding extraneous offense admissible on issue of intent when defendant testified he had no intent to commit charged offense);
 Rabb v. State
, 835 S.W.2d 270, 273 (Tex. App.—Tyler 1992, no pet.) (holding unbroken sequence of bad checks relevant to show Appellant’s knowledge of state of his bank account and intent to obtain insurance and car by deception).  
Thus, 
Moreno
 does not control the disposition of the present case.

C.  Standard of Review for Trial Court’s Rule 403 Determination

If a trial court determines that evidence of other crimes or extraneous misconduct has relevance aside from character conformity, and a timely, proper Rule 403 objection is made, the trial court then must make a balancing determination under Rule 403.  
Montgomery,
 810 S.W.2d at 388-89; 
Jones
, 119 S.W.3d at 421-22.  
The trial court balances whether the prejudicial effect of an extraneous offense substantially outweighs its probative value by examining
:  (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury “in some irrational but nevertheless indelible way”; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent’s need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.
  Mozon v. State,
 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) 
(citing 
Montgomery
, 810 S.W.2d at 389-90).  When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. 
Curtis
, 89 S.W.3d at 170 (citing 
Montgomery
, 810 S.W.2d at 392).

D.  Rule 403 Balancing Test

Owen argues that the deferred adjudication probation evidence was not necessary to prove intent or knowledge and was extremely prejudicial and inflammatory.  The State agrees that the deferred adjudication probation evidence was prejudicial to Owen, as all the State’s evidence was prejudicial to her, but asserts that it is doubtful any prejudice substantially outweighed the probative value of the evidence.

Applying the Rule 403 balancing factors set out in 
Montgomery
, we first examine how compellingly the deferred adjudication probation shows Owen’s intent or knowledge in the charged offense and evaluate the strength of the evidence connecting Owen to the extraneous offense.  Because the present indictment charged that Owen, “did then and there 
intentionally or knowingly possess
 a controlled substance, to-wit:  methamphetamine, in an amount of four (4) grams or more but less than two hundred (200) grams by aggregate weight including any adulterants or dilutants,” and because Owen claimed that she possessed no knowledge of the drugs and no intent to possess them, evidence that Owen previously received drugs via FedEx at Dr. Wulwick’s office and had in fact previously possessed methamphetamine makes it at least somewhat more likely that she knew the FedEx package at issue contained drugs and that she intended to posses them.  [Emphasis added.]
  Moreover, it is doubtful that evidence of Owen’s deferred adjudication impressed the jury in some irrational way; her prior offense was no worse than the charged offense. Additionally, the jury had already heard testimony from Maurizio that, according to the tipster, Owen received similar packages at the dentist’s office
 during the last four or five years; that Owen admitted to him that she knew the FedEx package contained methamphetamine; that the package came from Ontario, California; that she had received methamphetamine via FedEx at the dentist office on more than one occasion; and that she had also received methamphetamine from the Chino area in California
.  Here, the evidence of Owen’s deferred adjudication probation was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose.
(footnote: 3)  
See Taylor v. State
, 920 S.W.2d 319, 323 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 951 (1996).  Additionally, the State did not spend an excessive amount of time developing the deferred adjudication probation testimony during the guilt-innocence phase; the testimony amounts to a little more than 2 pages from a 274-page record.  
Cf. Booker
, 103 S.W.3d at 536 (noting third 
Montgomery
 factor weighed in favor of excluding extraneous offense when trial time spent proving extraneous offense exceeded time spent proving charged offense). Furthermore, the State needed the evidence because Owen denied any knowledge of the drugs or criminal intent.  We hold that the trial court did not abuse its discretion by concluding that the danger of unfair prejudice did not substantially outweigh the probative value of Owen’s deferred adjudication probation.  
See Jones
, 119 S.W.3d at 423
; Bradshaw v. State
, 65 S.W.3d 232, 238
 (Tex. App.—Waco 2001, no pet.).  We overrule Owen’s first issue.
(footnote: 4)
IV.  Admissibility of evidence of possession of

fictitious driver’s licenses and credit cards

In her second issue, Owen argues that admission of evidence that she possessed fictitious driver’s licenses and credit cards violated Rule 608(b). Owen argues that her possession of these items did not tend to prove any fact at issue and instead merely served to inflame the jurors by showing she was a criminal generally.  The State theorized that this evidence was admissible so the jury could decide “whether or not [Owen is] telling the truth in front of them here today.”  On appeal, the State argues that if the admission of the evidence was improper, the error was harmless.

A.  Standard of Review for Impeachment

Owen’s second issue challenges an evidentiary ruling, so we review it under an abuse of discretion standard.  
See Metts v. State
, 22 S.W.3d 544, 550 (Tex. App.—Fort Worth 2000, pet. ref’d).  As a general rule, specific acts of misconduct may not be introduced to impeach a party or witness.  
See Prescott v. State
, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); 
Murphy v. State
, 587 S.W.2d 718, 721 (Tex. Crim. App. 1979); 
Medina v. State
, 828 S.W.2d 268, 269-70 (Tex. App.—San Antonio 1992, no pet.).  When the witness is a defendant, there is an additional danger to guard against—the danger that evidence of an unadjudicated crime could be taken as proof of the defendant’s character as a criminal generally.  
Moreno
, 22 S.W.3d at 486.  Rule of Evidence 404(b) makes such evidence inadmissible for such a purpose. 
Id.
  Additionally, Rules 608 and 609 specifically prohibit the admission of specific instances of conduct of the witness for the purpose of impeaching the witness’s credibility, unless the misconduct resulted in a final conviction for a felony or a crime of moral turpitude.  
Tex. R. Evid.
 608(b), 609(a).  An exception exists when the witness, during direct examination, “opens the door” or leaves a false impression with the jury as to the extent of her prior conduct, which may include arrests, convictions, charges, or general “trouble.”  
See Prescott
, 744 S.W.2d at 130-31; 
Veteto v. State
, 8 S.W.3d 805, 815 (Tex. App.—Waco 2000, pet. ref’d).  The only requirement is that, if the “opening door” testimony is volunteered by the defendant on cross-examination, it must be volunteered without any prompting or maneuvering by the State.  
Lopez v. State
, 928 S.W.2d 528, 531-32 (Tex. Crim. App. 1996).

B.  Admissibility Determination

The State asked Owen on cross-examination whether she had ever lied about who she was.  Owen answered no.  The State then asked Owen to identify three Texas driver’s licenses not bearing her name or birth date, and Owen admitted the licenses were in her possession on August 16, 2002.  The State also asked Owen to identify six credit cards, and Owen indicated five of the cards bearing the names Carolina Harris, Jane Parr, and Leah Oden
 were in her possession on August 16, 2002.  The State then offered the licenses and credit cards into evidence.  Owen objected, reurging the objections she previously made outside the presence of the jury.
(footnote: 5)  The trial court overruled the objections and admitted the evidence.

Service Lloyds Insurance Company v. Martin
(footnote: 6) provides a framework for resolving the admissibility issues in the present case.  855 S.W.2d 816, 823 (Tex. App.—Dallas 1993, no writ).
  In 
Martin
, a workers’ compensation
 insurance carrier sought to introduce a job application, allegedly demonstrating the claimant’s willingness to make misrepresentations for financial gain, and thereby prove the claimant’s character and show that he acted in conformity therewith in the case being tried.  
Id.
  The carrier did not offer the evidence as proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident; thus, it was not admissible under 404(b).  
Id.
  Noting that Rules 609(a) and 608(b) prohibit impeachment of the 
claimant with this evidence, the appellate court held 
the trial court did not abuse its discretion in excluding this exhibit.  
Id.

Here, through cross-examination, the State maneuvered its questioning to elicit a “no” answer from Owen, that she had never lied about who she was. The State’s sole reason then for offering the evidence of Owen’s possession of fictitious driver’s licenses and credit cards was to impeach Owen under Rule 608(b) and 609
, not to show motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident under Rule 404(b).  In fact, the State concedes in its brief that “[t]he evidence regarding the fake driver’s licenses and credit cards . . . bore no relationship to the sole contested issue of intent.”  Owen’s “no” answer to the single general question propounded by the State simply did not create the type of false impression before the jury that needed to be cleared up through the admission of other wrongs.  
See Veteto
, 8 S.W.3d at 815 (holding trial court erred by permitting State to question defendant about prior sexual impropriety accusations when no false impression was created by his answer); 
see also Norrid v. State
, 925 S.W.2d 342, 347 (Tex. App.—Fort Worth 1996, no pet.) (holding certain questions on cross-examination not relevant to contested issues in case and would confuse issues before jury and constitute harassment of witness).  We 
hold that the trial court abused its discretion by allowing the State to impeach Owen with unadjudicated offenses in violation of Rules 608(b) and 609.  
See Eris v. Phares
, 39 S.W.3d 708, 717 (Tex. App.—Houston [1
st
 Dist.] 2001, pet. denied) (holding Phares’s employee’s testimony wrongfully impeached Eris’s credibility under Rules 608 and 609 by referring to specific instance of Eris’s misconduct other than conviction for felony or misdemeanor involving moral turpitude); 
Gonzales v. State
, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref’d) (holding trial court correctly ruled that use of specific instance of conduct as character evidence was prohibited by Rule 608(b)); 
Ramirez v. State
, 830 S.W.2d 827, 829 (Tex. App.—Corpus Christi 1992, no pet.) (holding trial court did not abuse its discretion in denying appellant’s motion for new trial where evidence that appellant failed to discover was not admissible under Rules 608(b) or 609).

C.  Harm Analysis

Error under the rules of evidence in the admission of evidence constitutes nonconstitutional error.  
See Johnson v. State,
 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  A reviewing court is to disregard nonconstitutional error that does not affect the substantial rights of the defendant.  
Tex. R. App. P.
 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States,
 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  In 
Kotteakos,
 the United States Supreme Court explained:

[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment 
was not substantially swayed
 by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error.  It is rather, even so, whether the error itself had 
substantial influence.
  If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 765, 66 S. Ct. at 1248 (emphasis added); 
see also Motilla v. State,
 78 S.W.3d 352, 355-58 (Tex. Crim. App. 2002); 
Johnson v. State,
 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).

The Supreme Court has defined “grave doubts” to mean “in the judge’s mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.”  
Webb v. State,
 36 S.W.3d 164, 182-83 (Tex. App.—Houston [14
th
 Dist.] 2000, pet. ref’d) (op. on reh’g) (citing 
O’Neal v. McAninch,
 513 U.S. 432, 435, 115 S. Ct. 992, 994 (1995)).  If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, that is, as having a substantial and injurious effect or influence in determining the jury’s verdict.  
Id.

The defendant is not required to prove harm from an error.  
Johnson,
 43 S.W.3d at 4.  Indeed, there ordinarily is no way to prove “actual” harm.  
Id.
  It is instead the duty of the reviewing court to assess harm from the context of the error.  
Id.
  Thus, the proper inquiry is whether any error in the trial court’s admission of Owen’s possession of the fictitious driver’s licenses and credit cards substantially swayed or influenced the jury’s verdict, or whether we are left in grave doubt as to whether this evidence substantially swayed or influenced the jury’s verdict.  
See Kotteakos,
 328 U.S. at 765, 66 S. Ct. at 1248; 
Johnson,
 43 S.W.3d at 4.  In making this determination, we consider the trial court’s admission of the evidence 
in the context of the entire record and not just whether there was sufficient or overwhelming evidence of the defendant’s guilt.  
See
 
Motilla,
 78 S.W.3d at 355-56.  As stated in 
Harris v. State
:

[A] reviewing court in applying the harmless error rule should not focus upon the propriety of the outcome of the trial.  Instead, an appellate court should be concerned with the integrity of the process leading to the conviction. . . .
 If the error was of a magnitude that it disrupted the [jurors’] orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted.  Again, it is the effect of the error and not the other evidence that must dictate the reviewing court’s judgment.

790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989).

Here, the record reveals
 that the State did not spend much time during the guilt-innocence phase of the trial developing testimony concerning Owen’s possession of the fictitious credit cards and driver’s licenses.  In fact, the only witness to testify regarding the drivers’ licenses and credit cards was Owen. The State did comment on this evidence several times during closing argument, 
but out of twenty-two exhibits admitted during the trial, only eight pertained to these items.

Moreover, the record contains ample evidence supporting Owen’s guilt
. 
See Venable v. State
, 113 S.W.3d 797, 801 (Tex. App.—Beaumont 2003, no pet.).  For instance, the FedEx package was addressed to Owen, and evidence of prior FedEx payments, as well as blank FedEx package slips, was found when Owen’s car was inventoried.  Maurizio testified that Owen told him the drugs were hers, that she planned to sell them, and that she even gave him the names of drug suppliers, leading to the discovery of two methamphetamine labs.  Additionally, according to Maurizio, Owen never asserted until trial that the FedEx package belonged to a coworker.

The drivers’ license and credit card evidence introduced here is not the type of inherently inflammatory evidence likely to have a devastating impact on the jury’s rational disposition towards other evidence.  
Cf. Booker
, 103 S.W.3d at 535 (recognizing inherently inflammatory nature of extraneous offense evidence of sexual misconduct and misconduct involving children).  Instead, the drivers’ license and credit card evidence is less 
severe than the instant offense. 
See, e.g., Taylor
, 920 S.W.2d at 323 (holding that because previous, extraneous murder was "no more heinous" than murder being prosecuted, its admission was thus "not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose"); 
Venable
, 113 S.W.3d at 801 (holding erroneous admission of victim’s cellular records was harmless error in murder prosecution in light of cumulative evidence and overwhelming evidence of guilt).
  
We can say, with more than fair assurance, after considering the entire record without stripping it of the admission of the extraneous offense evidence, that the evidence did not have a substantial or injurious influence on the jury’s verdict.  Accordingly, we hold that the trial court’s admission of the drivers’ license and credit card evidence
 
was not harmful under the standard set forth in Rule 44.2(b).  
Tex. R. App. P.
 44.2(b).  We overrule Owen’s second issue.

V.  Conclusion

Having overruled Owen’s two issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL F: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: May 6, 2004

FOOTNOTES
1:
See
 Tex. R. App. P.
 47.4.

2:
The indictment charged that Owen “intentionally or knowingly” possessed the methamphetamine.

3:
Through an instruction, the trial court limited the jurors’ consideration of Owen’s deferred adjudication probation only to the issue of intent.

4:
In any event, no harm stemmed from the admission of Owen’s deferred adjudication probation because Maurizio testified that Owen admitted possessing methamphetamine on other occasions when she received similar FedEx packages at Dr. Wulwick’s office.

5:
Outside the presence of the jury, Owen’s counsel argued:

Your Honor, I -- I believe that this -- this -- this comes down to, basically, our motion in limine that there needs to be a hearing prior to them trying to introduce any extraneous offenses.  The State is offering in compliance with that, without the presence of the jury -- 

. . . .

. . . -- that they would intend to cross-examine this witness with regards to extraneous offenses, essentially, to wit, her possession of some items that -- that purport to be false driver’s -- identification or credit cards.

And I would state, basically, that that’s not admissible because it would be evidence of character and conduct of a witness under 608(b) specific instances of conduct of the witness for the purpose of attacking or supporting a witness’[s] credibility.

Other than conviction of crime as provided by Rule 609, it may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.  And, basically, you know, these are not crimes for which she’s been convicted.  They are just, you know, basically, allegations at this point that have not -- some of which have not even resulted in any type of criminal charges being filed.

6:
Although 
Martin
 is a civil case, the same analysis applies to the present case because the rules of evidence are the same in both criminal and civil trials.  
See
 
Tex. R. Evid.
 101(b).