

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00136-CR

_____

BRONCHEA GERAD WALKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2013-1937-C1

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Edgar Llorens was robbed at Eddie's Tire Shop, his business in McLennan County,[1] by three men, each armed with a handgun and each having his face at least partially covered. Though video surveillance cameras recorded the robbers and Llorens, Llorens could not identify any of the men. Bronchea Gerad Walker was charged with aggravated robbery, along with Oliver Johnson and Willie Clark, who by definition are accomplices. Much evidence came from Johnson's testimony concerning the robbery and regarding text messages exchanged between Walker's and Johnson's cell phones. From his conviction for which he received a sentence of twenty-three years' incarceration, Walker appeals, urging two points of error, both related to the status of Johnson and Clark as accomplices.

We affirm the judgment of the trial court because (1) text messages from an accomplice's cell phone were properly admitted and (2) there was sufficient corroboration of the accomplice-witness testimony.

## (1)  *Text Messages from an Accomplice's Cell Phone Were Properly Admitted*

Walker argues that text messages from Johnson's cell phone were not sufficiently authenticated and therefore constituted inadmissible hearsay, as there was insufficient evidence to connect those messages with Walker.[2] We disagree.

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Johnson and Walker exchanged a series of text messages on August 9 and August 14, 2013, in which they ostensibly discussed plans for the robbery that took place on August 14, 2013.

We review the admissibility of evidence for an abuse of discretion and will reverse the trial court's decision only if its ruling lies outside the zone of reasonable disagreement. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A text message, a short, typed communication typically sent and received using cellular telephones, is, like other evidence, authenticated when evidence supports a finding that it is what its proponent claims it to be. *Butler*, 459 S.W.3d at 600–01; *see* TEX. R. EVID. 901(a) (proponent must produce evidence sufficient to support finding that item is what proponent claims). While a text shown to have originated from a particular individual's cell phone might point to him or her as the probable author of that message, the proponent needs other authenticating information, given that someone else could have used the individual's phone. *Butler*, 459 S.W.3d at 601–02. The proponent of a text message as evidence could authenticate the message in various ways, including use of a witness who has knowledge about the message or pointing out distinctive characteristics of the message that tend to connect it to a particular person. *Id*. at 601; *see* TEX. R. EVID. 901(b)(1), (4). Here, the State provided both types of authenticating evidence.

In addition to evidence that the number of the cell phone originating the messages was linked to Walker,[3] within the messages themselves is information that tends to connect them with Walker as the author. The author of the messages knew when Walker's mother left the house for

---

[3]Johnson testified that the text messages originated from "Bshay," identified by Johnson as Walker. Haywood Sawyer, who at the time of trial was an investigator with the Bellmead Police Department, testified that he extracted Walker's cell phone number from Johnson's cell phone by looking at the contacts and getting the number for "Bshay." Sawyer then ran this number through a Facebook search engine. Sawyer explained that the search engine will tie the number to a person with a Facebook account, if that person listed his telephone number on Facebook when the account was initiated or updated. The number Sawyer extracted from Johnson's cell phone for "Bshay" matched Walker's Facebook account, and Sawyer was able to obtain a correct spelling of Walker's name.

work and the fact that Walker did not own a car. Johnson testified from his years of dealing with Walker and from the fact that intervening voice calls came from the same telephone[4] that Walker was originating the text messages and calls from that number, as was his custom.

Walker claims that, since Johnson was an accomplice, his testimony authenticating the text messages, without corroboration, cannot be used to support Walker's conviction. We disagree. The authentication rule requires the proponent of evidence to supply supporting information sufficient to support a finding that the item of evidence is what the proponent claims it is. TEX. R. EVID. 901. Here, we are concerned solely with Johnson's testimony that the text messages he received were from Walker. The purpose of the authentication rule is to ensure the trustworthiness of the information offered into evidence. *See Venable v. State*, 113 S.W.3d 797, 800 (Tex. App.— Beaumont 2003, pet. ref'd). There is no rule that would require the trial court to permit only those witnesses whom it finds credible and sufficiently disinterested to testify regarding authentication. The credibility of a witness is a question for the jury. The trial court has discretion to admit evidence that a reasonable juror could find sufficiently identified. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007).

In contrast, the policy underlying the accomplice-witness rule is to make sure that a conviction is not based solely on testimony of a biased accomplice who perhaps has good reason to incriminate the defendant. Accomplices often strike bargains with the State, in which the State

---

[4]Johnson testified that he and Walker discussed plans for the robbery on their cell phones during the time they were also discussing these plans via text messages. Johnson and Walker exchanged twenty-seven cell phone calls on August 10 through August 12, and nine additional calls on August 13 and 14. The cell phone record reflecting this series of calls was an accurate depiction of an image from Johnson's cell phone showing the history of calls between Johnson and the contact known as "Bshay."

agrees to a favorable sentencing recommendation in return for the accomplice's testimony against the defendant. *See Blake v. State*, 971 S.W.2d 451, 460 (Tex. Crim. App. 1998). Additionally, "those accused of crimes tend to try to place the responsibility for the commission of the crime on the other participants while downplaying their own participation, often in order to avoid the consequences of criminal acts." *Id.* Consequently, the rule was designed to prevent a defendant from being wrongly convicted. *Id.*

The authentication rule and the accomplice-witness rule thus fulfill different purposes at trial. The authentication rule is an evidentiary rule that guards against admitting evidence unless it is supported by evidence suggesting that it is what the proponent claims it is. The accomplice-witness rule is not an evidentiary rule, but is designed to protect the defendant from being wrongfully convicted on the testimony of an accomplice alone. We see no reason to append the additional requirement of corroboration to the authentication rule when the authentication testimony is offered by an accomplice, and decline to hold that such a requirement is mandated either under the authentication rule or the accomplice-witness rule.

Because the trial court acted within its discretion to find that the text messages were properly authenticated, they were properly admitted into evidence.

*(2)    There Was Sufficient Corroboration of the Accomplice-Witness Testimony*

Walker asserts that there is no evidence corroborating the trial testimony of accomplices Johnson and Clark and that, therefore, his conviction cannot stand. There is no dispute that Johnson and Clark were accomplices. Walker's claim is that no, or insufficient, evidence in this record, other than accomplice testimony within the meaning of Article 38.14 of the Texas Code of

Criminal Procedure, tends to connect Walker with the commission of the charged offense. *See Id.*[5] We find in this record sufficient evidence tending to connect Walker with the robbery in question.

The corroborating evidence needed to allow use of accomplice-witness testimony need only tend to connect the defendant with the crime; it need not be sufficient alone to establish guilt. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007); *Medrano v. State*, 421 S.W.3d 869, 883 (Tex. App.—Dallas 2014, pet. ref'd). Instead, the evidence must only link the defendant in some way to the commission of the offense such that rational jurors could conclude that this evidence sufficiently tends to connect the defendant to the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Such corroboration may come from small details. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999); *Medrano*, 421 S.W.3d at 883. Based on the particular facts and circumstances of each case, our analysis involves the combined force of all the non-accomplice evidence that tends to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *Medrano*, 421 S.W.3d at 883.

Officers were able to gain access to Johnson's cell phone containing text messages and voice call logs reflecting communications with a "Bshay," whom officers were able to identify independently as Walker. The text messages are communications between Johnson and Walker, ostensibly planning the robbery. Walker contends that the text message evidence is inadmissible and therefore cannot be used to corroborate the accomplice-witness testimony. We have

---

[5]"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of an offense." TEX. CODE CRIM. PROC. ANN. art. 38.14.

determined that the text messages were admissible. Even if they were improperly admitted, they should be considered in our review of the sufficiency of corroborating evidence. *Medrano*, 421 S.W.3d at 882–83. Walker next argues that, at most, the text messages connect Walker to Johnson, but not to the commission of the offense. We disagree.

The text messages from Friday, August 9 reveal (1) that Walker and Johnson were looking for some "wheels" and the time at which those wheels would be needed at Walker's house early that morning, (2) that Walker reassured Johnson that they would not come out "empty handed," (3) that they both needed money, (4) that Walker was skeptical about letting someone he did not know drive, even though that person would not say anything, (5) that Walker stated that he would wait, rather than to get it done on that morning with a driver he did not know, and that they could "go anytime of the week." The text messages from Wednesday, August 14 reveal (1) that, at 2:17 a.m., Walker told Johnson, "We [are] on 4 2mrrw," (2) that Walker told Johnson that he was up at 6:17 a.m., but asked Johnson to wait until about 6:45 to leave, and (3) that, when Johnson told Walker he was on his way at 6:50 a.m., Walker told him, "[W]ait till My [mother] leave[s]." Johnson explained that Walker was asking him to wait until his mother left for work. The robbery took place at 8:00 a.m. that morning.

These text messages establish that Walker needed a car for the purpose of getting money, that he did not trust someone that he did not know to drive the car, even though he was assured that the driver would not talk, and that he did not want Johnson to pick him up until his mother left for work on the morning of August 14, slightly more than one hour before the robbery took place. Additional non-accomplice evidence showed that Walker's mother was scheduled to arrive at work

7

on the morning of the robbery at 7:00 a.m., that she worked her usual shift that day, and that Johnson was at the scene of the robbery that morning. Walker testified in his own defense and admitted to having known Johnson for several years and having texted Johnson as reflected in the messages introduced into evidence. He explained that the text messages reflected his agreement to front Johnson marihuana so Johnson could sell it to get money. Walker further testified that he and Johnson were set to do a drug deal the morning of August 14 at the same time the robbery happened. The jury could have found this testimony lacked credibility and was simply an attempt to explain away incriminating evidence. The totality of this evidence would permit a reasonable fact-finder to conclude that the text messages tend to connect Walker to the robbery. *See Cerna v. State*, 441 S.W.3d 860, 866 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (among other things, fact that defendant exchanged text messages with accomplice just before murder corroborated testimony of accomplice).

Also, Walker's physical characteristics are said to be consistent with physical characteristics of one of the robbers captured by the video recordings of the robbery, other than Clark and Johnson. That, too, tends to connect Walker with the crime.

We find sufficient corroboration of Clark's and Johnson's testimony at trial to allow its admission and, thus, Walker's conviction.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:    March 18, 2016
Date Decided:      April 21, 2016

Do Not Publish