COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-164-CR
 
 
LAUREN 
BETH OWEN                                                            APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
------------
 
FROM 
THE 367TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. 
Introduction
        Appellant 
Lauren Beth Owen appeals her conviction for possession of methamphetamine.  
A jury found Owen guilty and assessed her punishment at sixteen years’ 
confinement and a $10,000 fine.  In two issues, she contends that the trial 
court erred by admitting evidence during the guilt-innocence phase that she was 
on deferred adjudication probation at the time of the instant offense and that 
she had several fictitious driver’s licenses and credit cards in her 
possession when she was arrested. We will affirm.
II. 
Background Facts
        In 
August 2002, Carrollton Narcotics Detective Steven Paul Maurizio and his 
partner, Detective Bill Hays, learned of an upcoming narcotics delivery to a 
dentist’s office at 2630 North Josey Lane, Suite 114.  A tip phoned in by 
a person who worked at the dentist’s office indicated that a white female 
carrying a Federal Express (FedEx) package containing the narcotics would exit 
the office and get in a white BMW automobile.  The tipster provided the 
information because Owen had received packages at the dentist office for four or 
five years, and the tipster was “tired of Ms. Owen receiving narcotics at [the 
dentist’s office].”
        Maurizio 
and Hays arrived at the office in their unmarked vehicles at approximately 10:00 
or 10:30 a.m. and spotted a white BMW parked in the parking lot.  At 
approximately 2:00 p.m., Owen, a white female, exited the dentist’s office 
with a FedEx package, walked to the white BMW, and got inside. Owen drove across 
the street to a bank to cash her paycheck.  Maurizio noticed that Owen’s 
right brake light was out and radioed for a marked patrol car to make a traffic 
stop.  During this time, Maurizio never let Owen’s car out of his sight 
and never observed anyone else in the car with Owen.
        Officer 
Jody Elmore responded to Maurizio’s call requesting a traffic stop and stopped 
Owen. Elmore ran a check on Owen’s driver’s license and discovered that an 
outstanding warrant existed for Owen’s arrest.  Elmore arrested Owen, and 
Maurizio and Hays inventoried the contents of Owen’s BMW. Maurizio observed 
the FedEx package opened in the BMW’s front passenger seat.  It was 
addressed to Owen’s attention at Dr. Arthur Wulwick’s office.  Upon 
further inspection, Maurizio found that envelopes inside the FedEx package 
contained three rocks of methamphetamine.  The rocks weighed a total of 
87.32 grams and had an estimated street value of $8,700 to $25,000.  
Maurizio also found several blank FedEx package slips and evidence of prior 
FedEx payments by Owen.  Owen had $1,625 in cash in her possession when she 
was arrested.
        Maurizio 
testified that approximately two or three weeks after Owen’s arrest, she 
called him on his cell phone ten to fifteen times.  Owen asked about 
retrieving her impounded car and provided Maurizio with reliable information 
about other methamphetamine users in the North Texas area, which led to the 
discovery of two methamphetamine laboratories.  Maurizio also testified 
that during these calls, Owen admitted that she knew the FedEx package contained 
methamphetamine, admitted that the drugs belonged to her, admitted that she 
planned to sell the drugs, said that the drugs were sent to her by Michelle 
Fernandez in Ontario, California, and said that she had previously received 
drugs via FedEx. Maurizio said Owen never told him that the package belonged to 
someone else at the dentist’s office.
        Owen 
testified that in August 2002, she was the office manager for Dr. Arthur Wulwick.  
As part of her job, she received packages of dental supplies that were often 
addressed to her and she checked them into inventory.  According to Owen, 
another employee of the office, Tonya Bradfield, said she had ordered a modem 
and had it sent to the office addressed to Owen because she did not work in the 
mornings when FedEx deliveries occurred. Owen said that, on the date in 
question, the FedEx truck was at the office when she arrived for work around 
9:00 a.m. Owen said she signed for and received the package, believing it was 
Bradfield’s modem.
        Approximately 
two hours later, Owen said the dentist frantically asked Owen where the FedEx 
package was; after she showed it to him, he handed it back to her and left for 
lunch.  Between 11:30 and noon, Bradfield called and asked Owen if the 
package had arrived.  Owen said that it had and told Bradfield that she 
would take it home and that Bradfield could come retrieve it.  While she 
was in the bank’s parking lot, however, Owen said Bradfield called again and 
asked if the two could meet in Plano. Owen then decided to open the FedEx 
package.
        Based 
on this testimony by Owen, the State argued that Owen had opened the door to 
cross-examination concerning her deferred adjudication probation for possession 
of methamphetamine and her possession of fictitious driver’s licenses and 
credit cards.  The trial court conducted a hearing outside the jury’s 
presence on the admissibility of this evidence.  Owen’s counsel argued 
that the evidence was inadmissible as improper impeachment evidence under Texas 
Rules of Evidence 608(b) and 609.  The State argued that Owen’s testimony 
before the jury that she had no idea the FedEx package contained drugs and had 
no intent to possess any drugs opened the door to the admission of her prior 
deferred adjudication probation for possession of methamphetamine.  The 
State argued that the probation evidence rebutted Owen’s testimony and, under 
Rule 404(b), showed intent and knowledge.  Additionally, the State argued 
that the fictitious driver’s licenses and credit cards were admissible to 
impeach Owen’s credibility because she had previously lied about who she was. 
The trial court ruled that the State would be allowed to question Owen 
concerning both categories of evidence because “the whole part of the direct 
examination was that she had no idea what was happening here” and that “the 
door [was] opened to all of this at this point because of that.” The trial 
court granted the defense a running objection.
        During 
the State’s cross-examination of Owen, she testified that when she opened the 
package and saw it did not contain a modem, she suspected it contained drugs. 
She claimed she could not throw the package out because it had her name on it. 
According to Owen, Maurizio lied when he testified that she told him she planned 
to sell the drugs. Pursuant to the trial court’s ruling, the State 
cross-examined Owen about her deferred adjudication probation for possession of 
methamphetamine and her possession of several fictitious driver’s licenses and 
credit cards when she was arrested. Owen claims that the admission of this 
evidence requires a new trial.
III. 
Admissibility of Deferred Adjudication Probation Evidence
        In 
her first issue, Owen contends that the trial court erred by admitting evidence 
of her prior deferred adjudication probation in violation of Texas Rules of 
Evidence 608(b) and 609, concerning impeachment evidence. The State maintains 
that Owen’s deferred adjudication probation was not admitted pursuant to Rules 
608 and 609 as impeachment evidence, but was admitted under Rule 404(b) to rebut 
Owen’s testimony that she lacked criminal intent or knowledge in possessing 
the drugs in the FedEx box. We agree that Rule 404(b) governs the admissibility 
of Owen’s deferred adjudication probation. See Ramirez v. State, No. 
14-99-00418-CR, 2000 WL 991621, at *3 (Tex. App.—Houston [14th 
Dist.] July 20, 2000, pet. ref’d) (not designated for publication) (stating 
extraneous act implicates provisions of Rule 404(b)); compare Castillo v. 
State, 59 S.W.3d 357, 361-62 (Tex. App.—Dallas 2001, pet. ref’d) 
(stating that because testimony was not about any extraneous act, wrong, or 
crime, rule 404(b) was not implicated).
        A. Standard of Review for a Determination Under Rule 
404(b)
        Rule 
404(b) embodies the established principle that a defendant is not to be tried 
for collateral crimes or for being a criminal generally. Tex. R. Evid. 404(b); Nobles v. 
State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); Jones v. State, 
119 S.W.3d 412, 418-19 (Tex. App.—Fort Worth 2003, no pet.); Booker v. 
State, 103 S.W.3d 521, 530 (Tex. App.—Fort Worth 2003, pet. ref’d) (op. 
on reh’g); Curtis v. State, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 
2002, pet. ref’d). Consequently, extraneous offenses are not admissible at the 
guilt-innocence phase of trial to prove that a defendant acted in conformity 
with his character by committing the charged offense. Tex. R. Evid. 404(b); Booker, 103 
S.W.3d at 529. An extraneous offense, however, has noncharacter-conformity 
relevance where it has any tendency to make the existence of a fact that is of 
consequence to the determination of the action more or less probable than it 
would be without the evidence. Tex. R. 
Evid. 401; Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 
2001); Jones, 119 S.W.3d at 418-19. That is, extraneous offense evidence 
that tends to make an elemental or evidentiary fact more or less probable or 
tends to rebut some defensive theory is relevant beyond its tendency to prove a 
person's character or that he acted in conformity therewith. Montgomery v. 
State, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh'g); Jones, 
119 S.W.3d at 418-19. Consequently, evidence of other crimes or extraneous 
misconduct may be admissible to prove motive, opportunity, intent, preparation, 
plan, knowledge, absence of mistake or accident, or to rebut a defensive theory. 
Tex. R. Evid. 404(b); Powell, 
63 S.W.3d at 439-40.
        The 
State, as the proponent of extraneous offense evidence, bears the burden of 
showing admissibility. See Rankin v. State, 974 S.W.2d 707, 718 (Tex. 
Crim. App. 1998) (op. on reh’g). Appellate courts give great discretion to the 
trial courts in matters of relevancy, reversing only if the trial court acts 
outside “the zone of reasonable disagreement.” Montgomery, 810 S.W.2d 
at 391.
B. Rule 404(b) Relevance Determination
        Here, 
Owen testified that she did not know the FedEx package contained drugs and had 
no intention of possessing drugs; she thought she was signing for a modem 
ordered by a coworker. The trial court admitted evidence of Owen’s deferred 
adjudication probation to rebut Owen’s defense that “she had no idea what 
was happening here,” i.e., that Owen had no intent to possess the drugs and no 
knowledge that the FedEx package contained drugs.[2] When 
a defense witness presents a picture that the defendant is not the type of 
person to commit the charged offense, the prosecution may rebut the defense 
witness’s testimony by introduction of similar extraneous offenses. Roberts 
v. State, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 
2000, pet. ref'd). By raising a defensive theory, the defendant opens the door 
for the State to offer rebuttal testimony regarding an extraneous offense if the 
extraneous offense has common characteristics with the offense for which the 
defendant was on trial. Id.
        Here, 
Owen’s defensive theory was that she did not know the FedEx package contained 
drugs. According to Maurizio, the tipster reported that Owen had received 
similar drug packages at the dentist office over a four or five year period. 
Maurizio also testified that Owen told him she knew that the FedEx package 
contained methamphetamine. Maurizio reported that Owen told him the package came 
from Ontario, California; that she planned to sell the methamphetamine; that she 
received methamphetamine via FedEx at her office on more than one prior 
occasion; and that she also received methamphetamine from the Chino area in 
California. Owen testified she did not tell Maurizio any of these things, that 
he was lying. Thus, evidence that Owen was on deferred adjudication probation 
for possessing methamphetamine, rebuts Owen’s testimony and defense that she 
had no idea the FedEx package contained drugs and that Maurizio was lying. The 
evidence of Owen’s deferred adjudication status for possession of 
methamphetamine makes the existence of a fact of consequence to the 
determination of the action, i.e., Owen’s knowledge of the contents of the 
FedEx package and her consequent intent to possess the contents of that package, 
more probable than it would be without the evidence. See Tex. R. Evid. 401. We hold that the 
trial court did not act outside the zone of reasonable disagreement in 
determining that Owen’s deferred adjudication was relevant. See Keller v. 
State, 818 S.W.2d 425, 429 (Tex. App.—Houston [1st Dist.] 1991, 
pet. ref’d) (holding extraneous transactions offered to show appellant’s 
intent to avoid payment for services rendered relevant); see also Ochoa v. 
State, No. 04-95-00505-CR, 1996 WL 682212, at *7 (Tex. App.—San Antonio 
Nov. 27, 1996, pet. ref’d) (not designated for publication) (holding testimony 
regarding appellant’s prior dealings with informant and officers’ suspicions 
regarding appellant’s involvement in drug delivery relevant to refute 
appellant’s claimed lack of knowledge).
        Owen 
contends that Moreno v. State requires the exclusion of the deferred 
adjudication probation evidence. 22 S.W.3d 482 (Tex. Crim. App. 1999). Here, 
unlike in Moreno, however, the State did not utilize Owen’s deferred 
adjudication probation in an effort to establish that Owen had a bias or 
interest in avoiding conviction, rendering her testimony not credible. Id. 
at 484, 486. Instead, the State offered evidence of Owen’s deferred 
adjudication probation to rebut Owen’s testimony and theory of defense and to 
show her knowledge of and intent to possess the contents of the FedEx 
package—methamphetamine. See, e.g., Cantrell v. State, 731 
S.W.2d 84, 90 (Tex. Crim. App. 1987) (holding extraneous offense admissible on 
issue of intent when defendant testified he had no intent to commit charged 
offense); Rabb v. State, 835 S.W.2d 270, 273 (Tex. App.—Tyler 1992, no 
pet.) (holding unbroken sequence of bad checks relevant to show Appellant’s 
knowledge of state of his bank account and intent to obtain insurance and car by 
deception). Thus, Moreno does not control the disposition of the present 
case.
        C. Standard of Review for Trial Court’s Rule 403 
Determination
        If 
a trial court determines that evidence of other crimes or extraneous misconduct 
has relevance aside from character conformity, and a timely, proper Rule 403 
objection is made, the trial court then must make a balancing determination 
under Rule 403. Montgomery, 810 S.W.2d at 388-89; Jones, 119 
S.W.3d at 421-22. The trial court balances whether the prejudicial effect of an 
extraneous offense substantially outweighs its probative value by examining: (1) 
how compellingly the extraneous offense evidence serves to make a fact of 
consequence more or less probable—a factor which is related to the strength of 
the evidence presented by the proponent to show the defendant in fact committed 
the extraneous offense; (2) the potential the other offense evidence has to 
impress the jury “in some irrational but nevertheless indelible way”; (3) 
the time the proponent will need to develop the evidence, during which the jury 
will be distracted from consideration of the indicted offense; and (4) the force 
of the proponent’s need for this evidence to prove a fact of consequence, that 
is, does the proponent have other probative evidence available to him to help 
establish this fact, and is this fact related to an issue in dispute. Mozon 
v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (citing Montgomery, 
810 S.W.2d at 389-90). When the relevant criteria are viewed objectively and 
lead to the conclusion that the danger of unfair prejudice substantially 
outweighs the probative value of the proffered evidence, the appellate court 
should declare that the trial court erred in failing to exclude it. Curtis, 
89 S.W.3d at 170 (citing Montgomery, 810 S.W.2d at 392).
        D. Rule 403 Balancing Test
        Owen 
argues that the deferred adjudication probation evidence was not necessary to 
prove intent or knowledge and was extremely prejudicial and inflammatory. The 
State agrees that the deferred adjudication probation evidence was prejudicial 
to Owen, as all the State’s evidence was prejudicial to her, but asserts that 
it is doubtful any prejudice substantially outweighed the probative value of the 
evidence.
        Applying 
the Rule 403 balancing factors set out in Montgomery, we first examine 
how compellingly the deferred adjudication probation shows Owen’s intent or 
knowledge in the charged offense and evaluate the strength of the evidence 
connecting Owen to the extraneous offense. Because the present indictment 
charged that Owen, “did then and there intentionally or knowingly possess 
a controlled substance, to-wit: methamphetamine, in an amount of four (4) grams 
or more but less than two hundred (200) grams by aggregate weight including any 
adulterants or dilutants,” and because Owen claimed that she possessed no 
knowledge of the drugs and no intent to possess them, evidence that Owen 
previously received drugs via FedEx at Dr. Wulwick’s office and had in fact 
previously possessed methamphetamine makes it at least somewhat more likely that 
she knew the FedEx package at issue contained drugs and that she intended to 
posses them. [Emphasis added.] Moreover, it is doubtful that evidence of 
Owen’s deferred adjudication impressed the jury in some irrational way; her 
prior offense was no worse than the charged offense. Additionally, the jury had 
already heard testimony from Maurizio that, according to the tipster, Owen 
received similar packages at the dentist’s office during the last four or five 
years; that Owen admitted to him that she knew the FedEx package contained 
methamphetamine; that the package came from Ontario, California; that she had 
received methamphetamine via FedEx at the dentist office on more than one 
occasion; and that she had also received methamphetamine from the Chino area in 
California. Here, the evidence of Owen’s deferred adjudication probation was 
not likely to create such prejudice in the minds of the jury that it would have 
been unable to limit its consideration of the evidence to its proper purpose.[3]  See Taylor v. State, 920 S.W.2d 319, 323 
(Tex. Crim. App.), cert. denied, 519 U.S. 951 (1996). Additionally, the 
State did not spend an excessive amount of time developing the deferred 
adjudication probation testimony during the guilt-innocence phase; the testimony 
amounts to a little more than 2 pages from a 274-page record. Cf. Booker, 
103 S.W.3d at 536 (noting third Montgomery factor weighed in favor of 
excluding extraneous offense when trial time spent proving extraneous offense 
exceeded time spent proving charged offense). Furthermore, the State needed the 
evidence because Owen denied any knowledge of the drugs or criminal intent. We 
hold that the trial court did not abuse its discretion by concluding that the 
danger of unfair prejudice did not substantially outweigh the probative value of 
Owen’s deferred adjudication probation. See Jones, 119 S.W.3d at 423; Bradshaw 
v. State, 65 S.W.3d 232, 238 (Tex. App.—Waco 2001, no pet.). We overrule 
Owen’s first issue.[4]
IV. 
Admissibility of evidence of possession 
of
fictitious 
driver’s licenses and credit cards
        In 
her second issue, Owen argues that admission of evidence that she possessed 
fictitious driver’s licenses and credit cards violated Rule 608(b).  Owen 
argues that her possession of these items did not tend to prove any fact at 
issue and instead merely served to inflame the jurors by showing she was a 
criminal generally.  The State theorized that this evidence was admissible 
so the jury could decide “whether or not [Owen is] telling the truth in front 
of them here today.”  On appeal, the State argues that if the admission 
of the evidence was improper, the error was harmless.
        A. Standard of Review for Impeachment
        Owen’s 
second issue challenges an evidentiary ruling, so we review it under an abuse of 
discretion standard.  See Metts v. State, 22 S.W.3d 544, 550 (Tex. 
App.—Fort Worth 2000, pet. ref’d). As a general rule, specific acts of 
misconduct may not be introduced to impeach a party or witness. See Prescott 
v. State, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); Murphy v. State, 
587 S.W.2d 718, 721 (Tex. Crim. App. 1979); Medina v. State, 828 S.W.2d 
268, 269-70 (Tex. App.—San Antonio 1992, no pet.).  When the witness is a 
defendant, there is an additional danger to guard against—the danger that 
evidence of an unadjudicated crime could be taken as proof of the defendant’s 
character as a criminal generally.  Moreno, 22 S.W.3d at 486.  
Rule of Evidence 404(b) makes such evidence inadmissible for such a 
purpose.  Id.  Additionally, Rules 608 and 609 specifically 
prohibit the admission of specific instances of conduct of the witness for the 
purpose of impeaching the witness’s credibility, unless the misconduct 
resulted in a final conviction for a felony or a crime of moral turpitude.  
Tex. R. Evid. 608(b), 
609(a).  An exception exists when the witness, during direct examination, 
“opens the door” or leaves a false impression with the jury as to the extent 
of her prior conduct, which may include arrests, convictions, charges, or 
general “trouble.”  See Prescott, 744 S.W.2d at 130-31; Veteto 
v. State, 8 S.W.3d 805, 815 (Tex. App.—Waco 2000, pet. ref’d).  The 
only requirement is that, if the “opening door” testimony is volunteered by 
the defendant on cross-examination, it must be volunteered without any prompting 
or maneuvering by the State.  Lopez v. State, 928 S.W.2d 528, 531-32 
(Tex. Crim. App. 1996).
        B. Admissibility Determination
        The 
State asked Owen on cross-examination whether she had ever lied about who she 
was.  Owen answered no.  The State then asked Owen to identify three 
Texas driver’s licenses not bearing her name or birth date, and Owen admitted 
the licenses were in her possession on August 16, 2002.  The State also 
asked Owen to identify six credit cards, and Owen indicated five of the cards 
bearing the names Carolina Harris, Jane Parr, and Leah Oden were in her 
possession on August 16, 2002.  The State then offered the licenses and 
credit cards into evidence.  Owen objected, reurging the objections she 
previously made outside the presence of the jury.[5]  
The trial court overruled the objections and admitted the evidence.
        Service 
Lloyds Insurance Company v. Martin[6] provides a 
framework for resolving the admissibility issues in the present case.  855 
S.W.2d 816, 823 (Tex. App.—Dallas 1993, no writ).  In Martin, a 
workers’ compensation insurance carrier sought to introduce a job application, 
allegedly demonstrating the claimant’s willingness to make misrepresentations 
for financial gain, and thereby prove the claimant’s character and show that 
he acted in conformity therewith in the case being tried. Id.  The 
carrier did not offer the evidence as proof of motive, opportunity, intent, 
preparation, plan, knowledge, or absence of mistake or accident; thus, it was 
not admissible under 404(b).  Id. Noting that Rules 609(a) and 
608(b) prohibit impeachment of the claimant with this evidence, the appellate 
court held the trial court did not abuse its discretion in excluding this 
exhibit.  Id.
        Here, 
through cross-examination, the State maneuvered its questioning to elicit a 
“no” answer from Owen, that she had never lied about who she was.  The 
State’s sole reason then for offering the evidence of Owen’s possession of 
fictitious driver’s licenses and credit cards was to impeach Owen under Rule 
608(b) and 609, not to show motive, opportunity, intent, preparation, plan, 
knowledge, or absence of mistake or accident under Rule 404(b).  In fact, 
the State concedes in its brief that “[t]he evidence regarding the fake 
driver’s licenses and credit cards . . . bore no relationship to the sole 
contested issue of intent.”  Owen’s “no” answer to the single 
general question propounded by the State simply did not create the type of false 
impression before the jury that needed to be cleared up through the admission of 
other wrongs.  See Veteto, 8 S.W.3d at 815 (holding trial court 
erred by permitting State to question defendant about prior sexual impropriety 
accusations when no false impression was created by his answer); see also 
Norrid v. State, 925 S.W.2d 342, 347 (Tex. App.—Fort Worth 1996, no pet.) 
(holding certain questions on cross-examination not relevant to contested issues 
in case and would confuse issues before jury and constitute harassment of 
witness).  We hold that the trial court abused its discretion by allowing 
the State to impeach Owen with unadjudicated offenses in violation of Rules 
608(b) and 609.  See Eris v. Phares, 39 S.W.3d 708, 717 (Tex. 
App.—Houston [1st Dist.] 2001, pet. denied) (holding Phares’s 
employee’s testimony wrongfully impeached Eris’s credibility under Rules 608 
and 609 by referring to specific instance of Eris’s misconduct other than 
conviction for felony or misdemeanor involving moral turpitude); Gonzales v. 
State, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref’d) (holding 
trial court correctly ruled that use of specific instance of conduct as 
character evidence was prohibited by Rule 608(b)); Ramirez v. State, 830 
S.W.2d 827, 829 (Tex. App.—Corpus Christi 1992, no pet.) (holding trial court 
did not abuse its discretion in denying appellant’s motion for new trial where 
evidence that appellant failed to discover was not admissible under Rules 608(b) 
or 609).
        C. Harm Analysis
        Error 
under the rules of evidence in the admission of evidence constitutes 
nonconstitutional error.  See Johnson v. State, 967 S.W.2d 410, 417 
(Tex. Crim. App. 1998).  A reviewing court is to disregard 
nonconstitutional error that does not affect the substantial rights of the 
defendant.  Tex. R. App. P. 
44.2(b).  A substantial right is affected when the error had a substantial 
and injurious effect or influence in determining the jury’s verdict.  King 
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. 
United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  In Kotteakos, 
the United States Supreme Court explained:
 
[I]f 
one cannot say, with fair assurance, after pondering all that happened without 
stripping the erroneous action from the whole, that the judgment was not 
substantially swayed by the error, it is impossible to conclude that 
substantial rights were not affected.  The inquiry cannot be merely whether 
there was enough to support the result, apart from the phase affected by the 
error.  It is rather, even so, whether the error itself had substantial 
influence.  If so, or if one is left in grave doubt, the conviction 
cannot stand.

328 
U.S. at 765, 66 S. Ct. at 1248 (emphasis added); see also Motilla v. State, 
78 S.W.3d 352, 355-58 (Tex. Crim. App. 2002); Johnson v. State, 43 S.W.3d 
1, 4 (Tex. Crim. App. 2001).
        The 
Supreme Court has defined “grave doubts” to mean “in the judge’s mind, 
the matter is so evenly balanced that he feels himself in virtual equipoise as 
to the harmlessness of the error.”  Webb v. State, 36 S.W.3d 164, 
182-83 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (op. on 
reh’g) (citing O’Neal v. McAninch, 513 U.S. 432, 435, 115 S. Ct. 992, 
994 (1995)).  If the reviewing court is unsure whether the error affected 
the outcome, the court should treat the error as harmful, that is, as having a 
substantial and injurious effect or influence in determining the jury’s 
verdict. Id.
        The 
defendant is not required to prove harm from an error.  Johnson, 43 
S.W.3d at 4.  Indeed, there ordinarily is no way to prove “actual” 
harm.  Id.  It is instead the duty of the reviewing court to 
assess harm from the context of the error.  Id.  Thus, the 
proper inquiry is whether any error in the trial court’s admission of Owen’s 
possession of the fictitious driver’s licenses and credit cards substantially 
swayed or influenced the jury’s verdict, or whether we are left in grave doubt 
as to whether this evidence substantially swayed or influenced the jury’s 
verdict.  See Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248; Johnson, 
43 S.W.3d at 4.  In making this determination, we consider the trial 
court’s admission of the evidence in the context of the entire record and not 
just whether there was sufficient or overwhelming evidence of the defendant’s 
guilt.  See Motilla, 78 S.W.3d at 355-56.  As stated in Harris 
v. State:
 
[A] 
reviewing court in applying the harmless error rule should not focus upon the 
propriety of the outcome of the trial. Instead, an appellate court should be 
concerned with the integrity of the process leading to the conviction. . . . If 
the error was of a magnitude that it disrupted the [jurors’] orderly 
evaluation of the evidence, no matter how overwhelming it might have been, then 
the conviction is tainted.  Again, it is the effect of the error and not 
the other evidence that must dictate the reviewing court’s judgment.

 
790 
S.W.2d 568, 587-88 (Tex. Crim. App. 1989).
        Here, 
the record reveals that the State did not spend much time during the 
guilt-innocence phase of the trial developing testimony concerning Owen’s 
possession of the fictitious credit cards and driver’s licenses.  In 
fact, the only witness to testify regarding the drivers’ licenses and credit 
cards was Owen.  The State did comment on this evidence several times 
during closing argument, but out of twenty-two exhibits admitted during the 
trial, only eight pertained to these items.
        Moreover, 
the record contains ample evidence supporting Owen’s guilt.  See 
Venable v. State, 113 S.W.3d 797, 801 (Tex. App.—Beaumont 2003, no 
pet.).  For instance, the FedEx package was addressed to Owen, and evidence 
of prior FedEx payments, as well as blank FedEx package slips, was found when 
Owen’s car was inventoried.  Maurizio testified that Owen told him the 
drugs were hers, that she planned to sell them, and that she even gave him the 
names of drug suppliers, leading to the discovery of two methamphetamine 
labs.  Additionally, according to Maurizio, Owen never asserted until trial 
that the FedEx package belonged to a coworker.
        The 
drivers’ license and credit card evidence introduced here is not the type of 
inherently inflammatory evidence likely to have a devastating impact on the 
jury’s rational disposition towards other evidence.  Cf. Booker, 
103 S.W.3d at 535 (recognizing inherently inflammatory nature of extraneous 
offense evidence of sexual misconduct and misconduct involving children).  
Instead, the drivers’ license and credit card evidence is less severe than the 
instant offense.  See, e.g., Taylor, 920 S.W.2d at 323 (holding that 
because previous, extraneous murder was "no more heinous" than murder 
being prosecuted, its admission was thus "not likely to create such 
prejudice in the minds of the jury that it would have been unable to limit its 
consideration of the evidence to its proper purpose"); Venable, 113 
S.W.3d at 801 (holding erroneous admission of victim’s cellular records was 
harmless error in murder prosecution in light of cumulative evidence and 
overwhelming evidence of guilt).  We can say, with more than fair 
assurance, after considering the entire record without stripping it of the 
admission of the extraneous offense evidence, that the evidence did not have a 
substantial or injurious influence on the jury’s verdict.  Accordingly, 
we hold that the trial court’s admission of the drivers’ license and credit 
card evidence was not harmful under the standard set forth in Rule 
44.2(b).  Tex. R. App. P. 2(b).  
We overrule Owen’s second issue.
V. 
Conclusion
        Having 
overruled Owen’s two issues, we affirm the trial court’s judgment.
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
F:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
May 6, 2004

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The indictment charged that Owen “intentionally or knowingly” possessed the 
methamphetamine.
3.  
Through an instruction, the trial court limited the jurors’ consideration of 
Owen’s deferred adjudication probation only to the issue of intent.
4.  
In any event, no harm stemmed from the admission of Owen’s deferred 
adjudication probation because Maurizio testified that Owen admitted possessing 
methamphetamine on other occasions when she received similar FedEx packages at 
Dr. Wulwick’s office.
5.  
Outside the presence of the jury, Owen’s counsel argued:
Your 
Honor, I -- I believe that this -- this -- this comes down to, basically, our 
motion in limine that there needs to be a hearing prior to them trying to 
introduce any extraneous offenses. The State is offering in compliance with 
that, without the presence of the jury --
                . 
. . .
. 
. . -- that they would intend to cross-examine this witness with regards to 
extraneous offenses, essentially, to wit, her possession of some items that -- 
that purport to be false driver’s -- identification or credit cards.
And 
I would state, basically, that that’s not admissible because it would be 
evidence of character and conduct of a witness under 608(b) specific instances 
of conduct of the witness for the purpose of attacking or supporting a 
witness’[s] credibility.
Other 
than conviction of crime as provided by Rule 609, it may not be inquired into on 
cross-examination of the witness nor proved by extrinsic evidence.  And, 
basically, you know, these are not crimes for which she’s been convicted.   
They are just, you know, basically, allegations at this point that have not -- 
some of which have not even resulted in any type of criminal charges being 
filed.
6.  
Although Martin is a civil case, the same analysis applies to the present 
case because the rules of evidence are the same in both criminal and civil 
trials.  See Tex. R. Evid. 101(b).