

# NUMBER 13-14-00031-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**AARON ANTHONY TORRES,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                             **Appellee.**

---

### On appeal from the 19th District Court
### of McLennan County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Aaron Anthony Torres appeals from a judgment rendered by the 19th

District Court of McLennan County, Texas.[1]  A jury found Torres guilty of seven counts

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 46, 2015 R.S.).

of sexual abuse of his minor daughter, G.T.[2]  Torres was found guilty of: continuous sexual abuse of a child (Count 1); aggravated sexual assault of a child (Counts 2–4); and indecency with a child by contact (Counts 5–7).  TEX. PENAL CODE ANN. §§ 21.02, 22.021, 21.11 (West, Westlaw through Ch. 46, 2015 R.S.).  After the jury assessed punishment, the trial court sentenced Torres to life imprisonment on Counts 1 through 4, and twenty years' imprisonment on Counts 5 through 7.  Torres raises three issues on appeal.  We affirm.

## I.  BACKGROUND[3]

In 2010, when G.T. was twelve years old, she was admitted to the Cedar Crest Hospital and Rehabilitation Center (Cedar Crest) for treatment and evaluation for behavioral issues.  While at Cedar Crest, G.T. made an "outcry" statement to one of her therapists, Lori Smith; G.T. gave Smith a piece of paper on which she detailed her outcry statement.  The hand-written note said "when I was little my dad raped and sexually assaulted me."  G.T. also told Smith that Torres said he would kill her if she told anyone.

Smith contacted Child Protective Services and the police.  G.T. was referred to the Advocacy Center where Ann Sims, M.D. performed an evaluation.  At the Advocacy Center, G.T. provided Dr. Sims a more detailed description of the abuse:  she claimed Torres began to sexually assault her when she was eight years old and that the abuse continued until she was eleven years old.  Detective Thomas Schmidt with the Beverly

---

[2] We will refer to the minor complainant as G.T., as it was the abbreviation used by the parties in their briefing.

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4.

2

Hills Police Department investigated the claim and determined there was probable cause to arrest Torres. Torres was later indicted for continuous sexual abuse of a child, aggravated sexual assault of a child, and indecency with a child.

Torres pled "not guilty" and elected to have a trial by jury. The jury found Torres guilty on all seven counts and assessed life imprisonment on Counts 1 through 4 and twenty years' imprisonment on Counts 5 through 7. The trial court entered judgment consistent with the verdict. This appeal followed.

## II.    CONFRONTATION CLAUSE

By his first issue, Torres contends that the trial court abused its discretion when it excluded video evidence of G.T.'s arrest in 2013. Specifically, Torres contends that the trial court violated his right to challenge the credibility and truthfulness of G.T. under the Confrontation Clause of the Sixth Amendment to the United States Constitution by excluding evidence that was necessary to challenge both her credibility and mental state.[4]

Torres's attorney argued before the trial court that the video was relevant to show, for credibility and impeachment purposes, the "mental disability or the mental capacity of the witness" and what she was going through "at that time." Upon questioning by the trial court, Torres's trial attorney clarified that he was not seeking to admit the video through Texas Rule of Evidence 608, but through the Confrontation Clause. Torres's attorney went on to say that the video was "evidence of [G.T.'s] mental incapacity, her

---

[4] At trial, Torres argued for admission of the video only on constitutional grounds pursuant to the Confrontation Clause. Torres, as the proponent of the evidence, was required to offer the evidence for its admissible purpose. *See* TEX. R. APP. P. 33.1; *Reyna v. State,* 168 S.W.3d 173, 173 (Tex. Crim. App. 2005). To the extent Torres raises other issues on appeal supporting admission of the video evidence, they are not preserved. *See* TEX. R. APP. P. 33.1; *Reyna,* 168 S.W.3d at 179.

mental disability that she's going through at those moments, and that's directly around the time frame that she is making these allegations . . . ." The trial court excluded the evidence.

Torres made an offer of proof to the trial court after it excluded his proffered evidence. Outside the presence of the jury, he called Officer Eric Trojanowski with the Waco Police Department to the stand. Officer Trojanowski testified that he responded to a call on January 7, 2013, about a disturbance in progress involving a runaway minor he identified as G.T. Officer Trojanowski took G.T. into custody in an effort to defuse the situation. The officer's video equipment recorded a video of the arrest and the subsequent ride in the patrol vehicle. That video showed G.T. aggressively resisting restraint, threatening Officer Trojanowski, and using profanity.[5]

During Officer Trojanowski's testimony, the trial court noted that the video was taken in 2013 and not in 2010 as argued by Torres. The following exchange occurred:

| | |
|---|---|
| Court: | I want to make sure I understood what you said earlier, Officer. This was in January of this year? |
| Officer: | Yes, sir. |
| Court: | Of 2013? |
| Officer: | Of 2013, yes, sir. |
| State: | So we don't even have the right officer. |
| Defense: | Oh, you know what, that's not the one before Cedar Crest. |
| Court: | Because this outcry happened in — |
| State: | 2010. |

---

[5] The video was also offered into evidence via an offer of proof.

Defense:     Right.

Court:       Okay, so this incident certainly doesn't have anything to do with this case.

Defense:     Okay, I'll just close it up, then.

             . . . .

Court:       I thought you were saying this happened in proximity to the time of the accusation.

Defense:     That's what I was thinking, but when I look back at it now, that's not correct.

## A.  Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *Oprean v. State,* 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Shilling v. State,* 60 S.W.3d 280, 282 (Tex. App.—Waco 2001, pet. ref'd).  The trial court did not abuse its discretion if its decision was in the "zone of reasonable disagreement."  *See Oprean,* 201 S.W.3d at 726.  "The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides:  'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'"  *Maryland v. Craig,* 497 U.S. 836, 844 (1990) (citing U.S. CONST. amend. VI).  The central purpose of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.  *Crawford v. Washington,* 124 U.S. 36, 74 (2004) (citing *Craig,* 497 U.S. at 845).

> As this description indicates, the right guaranteed by the Confrontation Clause includes not only a personal examination, but also (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility

5

of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* at 845–46 (internal citations omitted). "The Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id.* at 847 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 22 (1985) (per curiam)).

"Generally, the right to present evidence and to cross-examine witnesses under the Confrontation Clause does not conflict with the corresponding rights under state evidentiary rules." *Tollett v. State,* 422 S.W.3d 886, 892–93 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009)). The Confrontation Clause does not confer on a defendant the right to impeach the general credibility of a witness through otherwise prohibited modes of cross-examination. *Id.* at 893. "[D]espite a defendant's constitutional right to cross-examine witnesses, the trial court retains wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other matters, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (citing *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010)).

6

**B.      Discussion**

Pursuant to the Confrontation Clause of the Sixth Amendment, Torres had the right to be confronted with the witnesses against him.   *See Craig,* 497 U.S. at 894.   G.T. testified during the trial and was subject to cross-examination by Torres.   The transcript of Torres's cross-examination of G.T. consists of sixteen pages in the reporter's record. Torres had a full and fair opportunity to probe and expose G.T.'s alleged testimonial infirmities through cross-examination.   *See id.* at 847.

Torres contends, in error, that the Confrontation Clause entitled him to admit as evidence a video recording taken three years after the outcry statement at issue for the purpose of attacking G.T.'s credibility.   However, the Confrontation Clause does not permit Torres the right to impeach G.T.'s general credibility through otherwise prohibited modes of cross-examination.   *See id.* at 893.   Though Torres had a constitutional right to cross-examine G.T., the trial court retained wide latitude to impose "reasonable limits" on cross-examination when it was prejudicial, repetitive, or only marginally relevant."[6] *See id.* (citing *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010)).

We conclude the trial court did not abuse its discretion when it excluded the video evidence because the video was duplicative of extensive testimony about G.T.'s behavioral issues and its relevance was further diluted by the fact that it occurred three years after, and not immediately before, the outcry statement at issue.   *See id.* at 894– 97; *Irby,* 327 S.W.3d at 145.

We overrule Torres's first issue.

---

[6] G.T., her mother, Smith, and Dr. Sims testified regarding G.T.'s behavioral problems and her various treatment programs.

### III. TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.072

By his second issue, Torres contends that the trial court erred when it permitted the State to introduce G.T.'s "outcry" statement into evidence. Specifically, Torres contends that the State failed to follow the statutory provisions of article 38.072 of the code of criminal procedure because it did not give notice of its intent to use the outcry statement fourteen days before trial and the statement was admitted to the jury without a preliminary hearing on reliance. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West, Westlaw through Ch. 46, 2015 R.S.).

#### A. Applicable Law

Article 38.072 provides that outcry statements meeting the article's requirements are not inadmissible because of the hearsay rule. *Id.* The article requires the trial court to hold a hearing regarding reliability prior to admitting outcry testimony. *See id.* Generally, in order to complain about non-compliance with article 38.072, a defendant must preserve the issue for appeal by making an objection in the trial court. TEX. R. APP. P. 33.1(a); *Long v. State,* 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (per curiam); *Zarco v. State,* 210 S.W.3d 816, 829 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also Gabriel v. State,* 973 S.W.2d 715, 719 (Tex. App.—Waco 1998, no pet.) ("[A]fter a hearsay objection is made, the State has the burden to show it has complied with all the requirements listed in article 38.072.").

Torres did not object to the outcry statement during trial. The State referenced the outcry statement in its opening statement, and G.T.'s therapist testified to the outcry statement without objection. Torres cited to an instance in the record in which he

objected to hearsay; however, the objection was unrelated to the outcry statement at issue. The following exchange occurred:

> State: And just from—You were, obviously, not there at the time of her admission, but from your review of the records, what was your understanding of the reason she was brought to Cedar Crest that day.
>
> Witness: What I see is that she was brought due to aggressive behavior, and it does say secondary—
>
> Defense: Judge, I would object. At this time she's reading from the records. It's hearsay. She didn't make the records.

It is clear from the context of Torres's hearsay objection that it was not made to the outcry statement, but was instead made to G.T.'s medical records regarding her admission to the facility, a topic unrelated to her subsequent outcry.

Accordingly, we find that Torres did not adequately apprise the trial court of the nature of his complaint and, thus, did not preserve his complaint for appellate review. *See* TEX. R. APP. P. 33.1(a); *Long,* 800 S.W.2d at 548; *Zarco,* 210 S.W.3d at 828–29.

We overrule Torres's second issue.

### IV. CUMULATIVE ERROR

By his third issue, Torres contends that he was denied a fair trial based on the "cumulative errors" in the previously addressed issues. Torres's argument fails because we have determined that the trial court did not commit error at trial. *See Chamberlain v. State,* 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (noting that there is "no authority holding that non-errors may in their cumulative effect cause error"). We overrule Torres's third issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 1st
day of September, 2015.